# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOSHUA VERDELL,

              Petitioner,      :      Case No. 3:19-cv-188

  - vs -                          District Judge Thomas M. Rose
                                  Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution,

                                  :
              Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Joshua Verdell to obtain relief from his conviction in the Common Pleas Court of Montgomery County and consequent imprisonment in Respondent's custody. The case was referred to the undersigned under the Dayton General Order of Assignment and Reference, Day 13-01.

Under Rule 4 of the Rules Governing § 2254 Cases, the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Verdell pleads two grounds for relief:

> **Claim One:** Failure to exclude incriminating statements that are obtained without valid waiver of of [sic] the rights against self-incrimination constitutes illegal seizure.

1

> **Claim Two:** Denial of right to confront thee [sic] medic that took a part in the on-the-scene interrogation and recorded conversation rendered admitted evidence unconstitutional.

(Petition, ECF No. 1, PageID 4, 5.)

**Litigation History**

Verdell was indicted by the Montgomery County, Ohio, grand jury on December 29, 2016, on one count of murder, two counts of felony murder, two counts of felonious assault, and one count of tampering with evidence, along with several firearm specifications. *State v. Verdell,* 2nd Dist. Montgomery No. 27786, 2018-Ohio-4766, ¶ 2 (Nov. 30, 2018), appellate jurisdiction declined, 154 Ohio St. 3d 1522, 2019-Ohio-769. Verdell pleaded not guilty and filed a motion to suppress his statements on grounds they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id*. at ¶ 3. After his motion to suppress was denied, Verdell pleaded no contest to all charges and was sentenced to eighteen years to life imprisonment. *Id*. at ¶ 18.

**Claim One: Violation of Privilege Against Self-Incrimination**

In his First Claim for Relief, Verdell asserts his Fifth Amendment privilege against self-incrimination was violated both by Officer Stewart's actions as the scene of the crime and Detective Roberts later questioning at the Dayton Safety Building.

On appeal, Petitioner presented these claims in his two assignments of error:

I. STATEMENTS OBTAINED ON THE SCENE WERE INADMISSIBLE AS THE OFFICER CIRCUMVENTED MIRANDA BY ASKING QUESTIONS DURING THE APPELLANT'S CONVERSATION WITH THE MEDIC.

II. MR. VERDELL DID NOT KNOWINGLY AND VOLUNTARILY WAIVE HIS MIRANDA RIGHTS AT THE SAFETY BUILDING.

*Verdell*, 2018-Ohio-4766, ¶ 19.

**Part One: Incriminating Statements to Officer Stewart**

The Second District decided the First Assignment of Error as follows:

{¶ 21} Under his First Assignment of Error, Verdell contends the incriminating statements he made in response to Officer Stewart's questions at the crime scene should have been suppressed by the trial court because those statements were not preceded by *Miranda* warnings. We disagree with Verdell's claim.

{¶ 22} "The right to [*Miranda*] warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination." *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.), citing *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "It is well established, however, that the police are not required to administer [*Miranda*] warnings to every individual they question." *Id.*, citing *State v. Biros*, 78 Ohio St.3d 426, 440, 1997-Ohio 204, 678 N.E.2d 891 (1997). "Rather, only custodial interrogations trigger the need for [*Miranda*] warnings." *Id.*, citing *Biros* at 440. (Other citations omitted.)

{¶ 23} "Custodial interrogation' means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom to the degree associated with a formal arrest." (Citations omitted.) *State v. Vineyard*, 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 32; *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) ("the ultimate inquiry is simply whether there is a

'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest").

**{¶ 24}** Although Verdell argues that he was deprived of his freedom of movement to a degree associated with a formal arrest, in order to trigger the need for *Miranda* warnings, Verdell must have been subject to an interrogation at the time his freedom was so restrained. "'Interrogation' includes express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Strozier* at ¶ 20, quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). *Accord State v. Knuckles*, 65 Ohio St.3d 494, 1992- Ohio 64, 605 N.E.2d 54 (1992), paragraph two of the syllabus ("[w]hen a statement, question or remark by a police officer is reasonably likely to elicit an incriminating response from a suspect, it is an interrogation").

**{¶ 25}** "'Interrogation' must reflect 'a measure of compulsion above and beyond that inherent in custody itself.'" *State v. Haynes*, 2018-Ohio-607, 106 N.E.3d 342, ¶ 16 (2d Dist.), quoting *Innis* at 300. "[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Emphasis sic.) *Innis* at 301-302. Therefore, "[p]olice officers are not responsible for unforeseeable incriminating responses." (Citation omitted.) *State v. Waggoner*, 2d Dist. Montgomery No. 21245, 2006-Ohio-844, ¶ 14.

**{¶ 26}** In *Waggoner*, the defendant was traveling in a vehicle with some companions when he was stopped and arrested on an outstanding warrant. *Id.* at ¶ 2-3. After the defendant's arrest, the arresting officer saw a cell phone and jacket on the seat of the vehicle where the defendant had been sitting and asked the defendant whether the items were his belongings. *Id.* at ¶ 4. The defendant replied that the items were his, and the officer asked "if there was any other property (of his) in the vehicle." *Id.* In response, the defendant said there was a gun in the vehicle. *Id.* After the gun was found, the defendant was charged with carrying a concealed weapon. *Id.* at ¶ 5.

**{¶ 27}** The trial court in *Waggoner* suppressed evidence of the gun and the defendant's statement concerning the gun on grounds that an un-*Mirandized* custodial interrogation occurred. *Id.* In so holding, the trial court found the arresting office's question was an

interrogation because it was reasonably likely to elicit the incriminating response given by the defendant. *Id.* The State appealed from the trial court's decision and we reversed it. Specifically, we found that the record did not support finding that the arresting officer should have known that when he asked the defendant whether there was "any other property (of his) in the vehicle," he would have elicited an incriminating response from the defendant. *Id.* at ¶ 20. Thus, we held that *Miranda* warnings were not required to precede the officer's question as to whether the defendant had any other property in his vehicle. *Id. See also State v. Reindel*, 2017-Ohio-28, 80 N.E.3d 1098 (2d Dist.), ¶ 19 (holding there was "no basis to conclude that [the officer] should have known that his innocuous questions were reasonably likely to elicit an incriminating response from [the defendant]").

**{¶ 28}** The situation in the present case is similar to that in *Waggoner*. In this case, the record does not support finding that Officer Stewart should have known that when he asked Verdell "Who hit you in the fight?" and "Then what happened?" that Verdell would have confessed to shooting Shyne. The fact that Stewart's questions were asked during a medic's evaluation and that the questions did not reference the shooting indicate that Stewart was trying to determine how Verdell was injured, not to elicit an incriminating response. This conclusion is supported by Stewart's testimony that he did not suspect Verdell was involved in the shooting at the time he questioned him. Because the record indicates there was no way for Stewart to know that his questions would elicit Verdell's incriminating response, we do not find that Stewart's questions rose to the level of interrogation. Rather, the record indicates that Stewart's questions amounted to general on-the-scene fact finding, which generally does not constitute a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 477-478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**{¶ 29}** Given that Verdell was not interrogated by Officer Stewart, there was clearly no custodial interrogation that triggered the need for *Miranda* warnings. Therefore, Verdell's claim that the trial court erred in failing to suppress the incriminating statements because they were not preceded by *Miranda* warnings lacks merit, as *Miranda* warnings were not required.

**{¶ 30}** Verdell's First Assignment of Error is overruled.

*Verdell*, 2018-Ohio-4766.

When a state court decides on the merits a federal constitutional claim later presented to a

5

federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2), unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Here the Second District decided a claim which is part of Verdell's First Claim, to wit, whether Officer Stewart violated Verdell's Fifth Amendment privilege by not giving him the *Miranda* warnings. It concluded that the incriminating statements Verdell made in Stewart's presence were not the result of interrogation within the meaning of the Fifth Amendment.

Verdell does not cite any United States Supreme Court precedent that is contrary to the Second District's decision that what happened was not custodial interrogation, Indeed, the appellate court, *Verdell*, 2018-Ohio-4766, at ¶ 24, cites *Rhode Island v. Innis*, 446 U.S. 291 (1980). The *Innis* Court found that a defendant's admissions while in custody were not the product of custodial interrogation because they were not in response to any "words or actions on the part of police that they *should have reasonably known* were reasonably likely to elicit an incriminating response." 446 U.S. at 302 (emphasis in original).

The Second District's decision on the First Assignment of Error is not an objectively unreasonable application of *Miranda* or *Innis*. Officer Stewart was asking narrative questions – what happened next. It was in response to that question that Verdell said "I shot him" after reciting what led up to the shooting. On that basis, Claim One, Part One should be dismissed.

**Part Two: Incriminating Statements to Detective Roberts**

After he was arrested and then treated at the hospital, Verdell was transported in custody to the Dayton Safety Building, where he was interrogated by Detective Roberts. It is not disputed that Roberts read Verdell the *Miranda* warnings and obtained a signed waiver of *Miranda* rights. Instead, Verdell claims the waiver was not knowing and voluntary.

The Second District decided this claim as follows:

> **{¶ 31}** Under his Second Assignment of Error, Verdell contends the incriminating statements he made during his interview with Detective Roberts should have been suppressed by the trial court. In support of this claim, Verdell argues that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights prior to the interview. Verdell claims his *Miranda* waiver was not knowing, intelligent, and voluntary because he was physically injured and intoxicated at the time of the waiver. We once again disagree with Verdell's claim.
>
> **{¶ 32}** "In order for a waiver of the rights required by [*Miranda*] to be valid, the State bears the burden of demonstrating a knowing, intelligent, voluntary waiver based upon the totality of the facts and circumstances surrounding the interrogation." *State v. Dotson*, 2d Dist. Clark No. 97-CA-0071, 1997 Ohio App. LEXIS 6092, 1997 WL 822694, *7 (Nov. 21, 1997), citing *Moran*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410. In considering the totality of the facts and circumstances, we look at "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds*, 438 U.S. 911, 98 S. Ct. 3147, 57 L. Ed. 2d 1155 (1978).
>
> **{¶ 33}** "What is essential is that the defendant have a full awareness of the nature of the constitutional rights being abandoned and the consequences of his decision to abandon them, and that the waiver not be the product of official coercion." *Dotson*, 1997 Ohio App.

LEXIS 6092, [WL] at *7, citing *Moran*. "'An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver * * *.'" *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 106, quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

**{¶ 34}** Intoxication will not render a defendant's waiver of his *Miranda* rights invalid unless his ability to reason is sufficiently impaired. *State v. Monticue*, 2d Dist. Miami No. 06-CA-33, 2007-Ohio-4615, ¶ 12, citing *State v. Stewart*, 75 Ohio App.3d 141, 147, 598 N.E.2d 1275 (11th Dist.1991). In *State v. West*, 2d Dist. Montgomery No. 23547, 2010-Ohio-1786, we found that the "[d]efendant clearly exhibited behavior consistent with a person who is intoxicated," but nevertheless held that the record "supports the conclusion that [d]efendant's ability to reason was not so impaired that she was unable to understand her [*Miranda*] rights or the consequences of waiving them." *Id.* at ¶ 17. Accord *State v. Gray-Mosher*, 2018-Ohio-1422, 101 N.E.3d 729, ¶ 7 (2d Dist.) (holding that "[e]ven if we accept that [defendant] was intoxicated at the time of the assault and had emotional or mental problems, he appeared to be lucid at the time of the interview, which occurred roughly fifteen hours after the assault" and nothing in the record "suggests that [defendant] lacked an understanding of his *Miranda* rights or the capacity to waive them"); *State v. Lewis*, 10th Dist. Franklin No. 97APA09-1263, 1998 Ohio App. LEXIS 3429, 1998 WL 418913, *2 (July 21, 1998) (holding that "[a]bsent any evidence that the appellant's reasoning was impaired by drugs or alcohol, intoxication of a defendant will not invalidate a confession").

**{¶ 35}** In this case, the record does not establish that Verdell's physical injuries or intoxication prevented him from knowingly, intelligently, and voluntarily waiving his *Miranda* rights. Although Verdell waived his *Miranda* rights at an interview that occurred immediately after he was released from the hospital, the video evidence establishes that Verdell functioned in a normal manner during the interview and did not ask to stop the interview at any time due to pain or discomfort. As noted by Detective Roberts, Verdell suffered from a slight limp, wounds to his face, and skinned knees. Nothing in the record indicates that these injuries prevented Verdell from understanding his *Miranda* rights or from knowingly, intelligently, and voluntarily waiving those rights.

**{¶ 36}** While Verdell appeared intoxicated at the time he was found and picked up by Officers Stewart and Swagger, the video evidence establishes that Verdell was nevertheless lucid at the time of his

interview with Detective Roberts, which occurred three hours later. Verdell appeared alert and coherent during the interview and had no difficulty understanding Detective Roberts's questions or providing requested information. This is true despite the fact that Verdell spoke somewhat slowly and was animated at times. Nothing in the video evidence suggested that Verdell lacked an understanding of his *Miranda* rights or the capacity to waive them. Indeed, the video evidence demonstrated that Verdell understood his *Miranda* rights after they were provided to him both orally and in writing. Verdell thereafter agreed to waive his *Miranda* rights and signed a written waiver, which was a strong indication that Verdell's waiver was knowing, intelligent, and voluntary. *See Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, at ¶ 106.

**{¶ 37}** We also note that there is nothing in the record indicating that Verdell's *Miranda* waiver was anything but a free and deliberate choice made without intimidation, coercion, or deception. The record indicates that Verdell suffered no physical deprivation or mistreatment during the one-hour interview with Detective Roberts. The record also indicates that Detective Roberts made no threats or promises to Verdell during the interview. Verdell, who at the time of the interview was a 27-year-old high school graduate with prior experience in the criminal justice system, did not establish that the waiver of his *Miranda* rights was anything other than a knowing, intelligent, and voluntary decision.

**{¶ 38}** For the foregoing reasons, we find that Verdell's waiver of his *Miranda* rights was knowing, intelligent, and voluntary. Therefore, the trial court did not err in failing to suppress the incriminating statements Verdell made to Detective Roberts following his *Miranda* waiver.

**{¶ 39}** Verdell's Second Assignment of Error is overruled.

*Verdell*, 2018-Ohio-4766.

Apart from being voluntary, a *Miranda* waiver must also be "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Smith v. Mitchell*, 567 F.3d 246 (6th Cir. 2009), *quoting Colorado v. Spring,* 479 U.S. 564, 573 (1987).

In *Garner v. Mitchell*, the United States Court of Appeals for the Sixth Circuit summarized

the federal law governing habeas corpus claims arising out of the United States Supreme Court's decision in *Miranda*, as follows:

> [A habeas petitioner] has the burden of establishing that, under the totality of the circumstances, he did not knowingly and intelligently waive his rights before speaking to the police. *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005). "We are also mindful that in a habeas proceeding the petitioner 'has the burden of establishing his right to federal habeas relief . . . .'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). Under this inquiry, we examine "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Edwards v. Arizona*, 451 U.S. 477, 482 (1981). The relevant question is not whether the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege," but rather whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

557 F.3d 257, 260-61(6th Cir. 2009) (parallel citations omitted). The court explained that "the original purpose of the *Miranda* decision . . . was to 'reduce the likelihood that the suspects would fall victim to constitutionally impermissible practices of police interrogation.'" *Id*. at 262, *quoting New York v. Quarles*, 467 U.S. 649, 656 (1984).

Verdell claims his waiver was not voluntary because he was intoxicated, medicated for pain, and "sustained injury that affected his volition." (Petition, ECF No. 1, PageID 5). As the Second District noted, there was little or no evidence to support these claims. Verdell did not testify at the suppression hearing to any facts that would support these claims. 2018-Ohio-4766, at ¶¶ 35-36. Although there is officer comment about his drinking, the trial court was not told what medication he was given. Nor is there any suggestion why the medication would have interfered with this volition; if it was serving its purpose of reducing pain, it could well have made him more attentive to his situation.

Probably most important for our purposes is that the interrogation was video-recorded, thus allowing both the trial court and the Second District a much more substantial body of evidence on which to evaluate the waiver question. Recording interrogations has been strongly recommended as a needed reform by those who have studied false convictions. See BRANDON L. GARRETT, CONVICTING THE INNOCENT 247-48 (2011). The Joint Task Force of the Supreme Court of Ohio and the Ohio State Bar Association recommended "Custodial interrogations, as defined by *Miranda v. Arizona*, shall be recorded and, if not recorded, then the statements made during the interrogation should be presumed 'involuntary.'" Joint Task Force to Review the Administration of Ohio's Death Penalty, *Final Report & Recommendations*, https://www.sc.ohio.gov/Boards/deathPenalty/resources/finalReport.pdf (Apr. 2014). Although this recommendation has not become the law in Ohio, it certainly is a best police practice. But the City of Dayton Police carried out that recommendation in this case, leading the Second District to uphold the *Miranda* waiver because they could see and hear what actually happened.

Because the Second District's holding on Verdell's Second Assignment of Error is neither contrary to nor an objectively unreasonable application of *Miranda*, this second part of Claim One should also be dismissed.

**Claim Two: Denial of the Right to Confrontation**

In his Second Claim for Relief, Verdell asserts his right to confront the witnesses against him, guaranteed by the Sixth Amendment, was violated when then medic who was part of the exchange between Verdell and Officer Stewart was not called to testify at the suppression hearing.

The Second District found that after Officer Stewart apprehended Verdell, he took him

back to the scene of the car accident from which it appeared he had walked away. *Verdell*, 2018-Ohio-4766, at ¶ 8. The medic asked Verdell if he was injured, and Verdell replied that "his nose was bleeding and he wanted to go home and to the hospital." *Id.* at ¶ 10. So far as the Second District's opinion shows, the medic, who is not named in the opinion, was not called to testify at the suppression hearing. Verdell's Second Claim asserts this violated his Confrontation Clause rights. He claims:

> Since Verdell was denied counsel as he was being interrogated, he has a right to cross-examination of thee [sic] medic for constitutional shoal [sic]. Without his participation in the suppression hearing, the state trial court was denied expert testimony as to Verdell's volition at the time of questioning. The Constitution does not tolerate such treatment.

(Petition, ECF No. 1, PageID 6).

Verdell's Second Claim should be dismissed as procedurally defaulted because he did not raise it on direct appeal.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal

habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Sixth Circuit requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d at 138; accord *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule: claims which are capable of being raised an decided

on the direct appeal record must be raised in that forum or be barred from later presentation by *res judicata.* Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994) (citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001) (Smith, J.). "[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 103 Ohio App. 3d 307, 315 (12th Dist. 1995). The Ohio courts have consistently enforced the rule. *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981). Therefore, if Verdell now attempted to present this claim to an Ohio court, his cause would be dismissed as barred by *res judicata.* Claim Two should therefore be dismissed.

Alternatively, Claim Two is without merit because it does not state a violation of the Confrontation Clause of the Sixth Amendment. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). Essentially, the Confrontation Clause constitutionalizes part of the rule against hearsay testimony for criminal trials. The Magistrate Judge accepts Verdell's assertion that the Confrontation Clause applies to suppression hearings, although the cases he cites, *United States v. Gouveai,* 467 U.S. 180 (1984), and *United States v. Ash,* 413 U.S. 300 (1973), do not stand for that proposition. But there is no record of the State attempting to admit any out-of-court statement from the medic at the suppression hearing. Such an attempt would have triggered the Confrontation Clause, and Verdell would have been to cross-examine.

Instead of a Confrontation Clause claim, Verdell seems to be arguing that the State should have been required to present the medic at the hearing so that he could testify about Verdell's mental condition. But the only evidence required to be presented at a suppression hearing is the evidence the State intends to introduce at trial, so that it can be tested for admissibility under the Constitution. The State is not required to produce at trial, much less at a suppression hearing, every person who may have witnessed some portion of what turned into a criminal case. Of course, if Verdell believed the medic's testimony would have been helpful, as he seems to imply, he had the right to subpoena the medic to appear.

Because Claim Two is both procedurally defaulted and without merit, it should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 21, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).